IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )    Judge Boyko
                                   )    Cleveland, Ohio
        vs.                        )
                                   )    Number 1:16CR200
BRANDON WAGNER,                    )
                                   )
                Defendant.         )

                    - - - - -
         TRANSCRIPT OF PROCEEDINGS HAD BEFORE

        THE HONORABLE CHRISTOPHER A. BOYKO

              JUDGE OF SAID COURT,

           ON MONDAY, MARCH 20, 2017
                    - - - - -

APPEARANCES:

For the Government:          MARISA DARDEN,
                             Assistant U.S. Attorney
                             801 West Superior Avenue
                             Cleveland, OH 44113
                             (216) 622-3600

For the Defendant:          RODGER A. PELAGALLI, ESQ.,
                             Suite 401
                             6659 Pearl Road
                             Parma Hts., OH 44130
                             (440) 845-3030

Official Court Reporter:    Shirle M. Perkins, RDR, CRR
                             U.S. District Court
                             801 West Superior, #7-189
                             Cleveland, OH 44113-1829
                             (216) 357-7106


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1        <u>MONDAY SESSION, MARCH 20, 2017, AT 9:58 A.M.</u>

2                DEPUTY CLERK:  Your Honor, the case before the

3    Court this morning is United States of America versus

4    Brandon Wagner, Case Number 16CR200.

10:12:09  5                THE COURT:  Thank you.

6            Mr. Wagner, you are present?

7                THE DEFENDANT:  Yes, your Honor.

8                THE COURT:  I see Mr. Pelagalli is here

9    representing you.

10:12:14 10                MR. PELAGALLI:  Good morning, your Honor.

11                THE COURT:  Good morning.  Ms. Darden on

12    behalf of the Government.

13                MS. DARDEN:  Good morning, your Honor.

14                THE COURT:  Ms. Naomi Morgan for Probation.

10:12:21 15    We're here today for sentencing.

16            Mr. Pelagalli, would you please go to the podium with

17    Mr. Wagner.

18            Mr. Pelagalli, as always, I'll start with you.  Have

19    you received a copy of the presentence investigation report

10:12:37 20    and had sufficient time to sit down with Mr. Wagner and go

21    over it in detail?

22                MR. PELAGALLI:  I have, your Honor.

23                THE COURT:  Mr. Wagner, I want to make sure

24    that you've had sufficient time to sit down with

10:12:45 25    Mr. Pelagalli, go over this report in detail, and have him

1    answer all of your questions to your satisfaction.

2         Has that been done?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Okay.

10:12:53  5    Mr. Pelagalli, do you have any objections to the

6    report itself?

7              MR. PELAGALLI:  I do not, your Honor.

8              THE COURT:  Okay.

9         On behalf of Mr. Wagner, please go ahead.

10:13:00  10              MR. PELAGALLI:  Thank you, your Honor.

11         May it please this Honorable Court.  Your Honor,

12    Brandon stands before you today a penitent, disappointed

13    man.  Mostly in himself.  I know indeed the choices he has

14    made that bring him before you today are the reasons for his

10:13:15  15    disappointment in himself.  Indeed his involvement in this

16    matter and the unfortunate loss of a young life is part and

17    parcel of the most recent scourge of drug addiction and

18    abuse in the United States over the last ten to 15 years.

19         As this Honorable Court reviews the law, the

10:13:33  20    presentence investigation, the Sentencing Memorandum, and

21    the 3553(a) factors, we would ask you to consider all of the

22    arguments we make, including this elocution here today, your

23    Honor, in making an appropriate sentence for Brandon.

24         First, I would bring to your attention, as you already

10:13:50  25    know, Judge, that Brandon has been a drug addict for most of

1   his life.  Certainly all of his adult life.  Well, this is

2   not an excuse for his behavior that leads to this sentencing

3   today.  It is the background I believe that gives this Court

4   insight into who Brandon Wagner was and is and the man he is

5   today versus when he was arrested, as you fashion a sentence

6   that is appropriate given all the circumstances to be

7   reviewed.

8        Again, Brandon stands before you today in complete

9   sadness for the loss of his friend, Corey, for whom he had

10  purchased the drugs that led to Corey's death.  Brandon

11  wants this Honorable Court to know that while he was

12  certainly -- he would certainly change places with Corey but

13  understands that's impossible.

14       He has done what he can do, and he's made the choices

15  he can make to take responsibility for his actions, to take

16  responsibility for his addiction, and have stood up and pled

17  to this charge.

18       He also stands here today and wishes to apologize to

19  Corey's family.  Indeed, your Honor, the proof of Brandon's

20  first few steps to his changed life, aside from owning his

21  responsibility in this matter, include that which has been

22  identified to this Court previously; his self-surrender to

23  the U.S. Marshals.

24       As this Court's aware, defendants who have been

25  through the system as Brandon has for drug convictions

1    before they understand the serious level of potential

2    incarceration that they're looking at, when given the

3    opportunity, Judge, they flee or attempt to numb themselves

4    with drugs.

10:15:27  5         In this particular case, one of the choices that

6    Brandon made when he was in state custody on another matter

7    being reviewed, he was told that he was going to be released

8    that day.

9         He informed not only that State authority but also

10:15:43 10  the -- his lawyer at the time that he was under an order

11   from this Court for pretrial detention.  For whatever

12   reason, he was still released that night.  Your Honor, as

13   you're well aware, he could have taken a few steps a couple

14   blocks to the west into a drug den and numbed himself with

10:15:59 15  drugs again.  He could have, based on his familial

16   connections with American Airlines and family in Jamaica,

17   attempted to flee.  But rather than those choices -- or try

18   to hide out -- he contacted his mother, who picked him up,

19   and he contacted my office, who contacted the Prosecutor and

10:16:16 20  contacted the U.S. Marshals.  And within several hours, he

21   was self-surrendering back to the Marshals.

22        Your Honor, you've had men and women stand before you

23   many times and tell you they're a changed person because of

24   their arrest in the process that they're in.  But, I believe

10:16:30 25  this Court is also well aware that words are one thing and

1    actions are another.  I think these actions speak volumes

2    about who Brandon Wagner is today versus his life before

3    this arrest.

4         The pretrial/presentence report is replete with drug

10:16:47  5    issues for Brandon, but there's no evidence of violence in

6    his history.  He is not a violent man.  One of his earlier

7    memories, as the report suggests, was finding his father

8    with a needle in his arm face down under a toilet dying of

9    an overdose from heroin.  That has stuck with him throughout

10:17:05 10    his life.  And again, it's no excuse for his actions for

11    this case, and it certainly doesn't reveal the fact that he

12    had a loving mother who was with him for all of his young

13    life, but it does give you some background on who Brandon

14    Wagner is, your Honor.

10:17:18 15         We would suggest that the Court take a look at that

16    and his life as a whole.  That includes the numerous letters

17    with stories and vignettes attached to the Sentencing

18    Memorandum, your Honor.  And I can -- I can suggest to you

19    that in my career of 31 years as an attorney, I've never

10:17:37 20    seen this type of outpouring from family, friends, and

21    people that Brandon has touched in his life.

22         They describe a guy that outside of his drug addiction

23    was a pretty amazing guy.  Somebody who in the neighborhood

24    created a skate park so that the kids had something positive

10:17:56 25    to do rather than get into trouble doing other things.

1       Somebody who assists the aged.  Somebody who assists

2   special needs people in the neighborhood.  That's who

3   Brandon Wagner is outside of his drug addiction.  I believe

4   that the numerous letters that were attached reveal that to

5   this Court.

6       We would ask you to consider those things as well,

7   your Honor, pursuant to the 3553(a) factors.  There's also

8   information about how Brandon, even though he knew his life

9   was about addiction, that he attempted to help other people

10  with similar drug problems, how he took people to the

11  hospital, how he encouraged them to get treatment, how he

12  revived several people that were overdosing.  And again,

13  this doesn't make him a hero, it just makes him an addict,

14  who also seems to understand that it's not for everybody.

15  It's for nobody really.  But he wanted to help other people.

16      In communication with him over the past several weeks,

17  I can suggest to you, your Honor, that this is a different

18  Brandon Wagner that I met several months ago when I

19  undertook this representation.

20      He's clear of mind and clear of heart on taking his

21  responsibility for this, for the horrible loss of Corey's

22  life and for wanting to do something he can do to help.

23      There's no more experienced guy at his age with drug

24  addiction than he, and he believes he can help people

25  discussing those things with them.

1      I believe that's a positive thing that he is taking

2  out of this very horrible situation.  It is sometimes said,

3  your Honor, life is about choices; those we make and those

4  we don't make.  While one can argue it's not a choice to be

5  addicted to drugs, at some point in time, Brandon chose to

6  use drugs and became an addict.  That scourge, as this Court

7  is well aware from his extensive experience in similar

8  cases, robs a man of his or her soul.

9      At this time, given the choices that Brandon has made

10  since the passing of Corey and his arrest for this case, we

11  would assert that when this Court applies the 3553(a)

12  factors, that you should find lenience for a man who,

13  outside of his life of drug addiction and drug abuse, did

14  not have a criminal life.  He's not a violent man.  The

15  choices Brandon has made in this case have been to stand up,

16  act responsibly, plead guilty, self-surrender when he could

17  have run, and apologizing to Corey's family, to this Court,

18  to law enforcement, and anybody else that's been harmed.

19      These choices, we suggest, your Honor, show you who

20  Brandon Wagner is today and wants to be in the future.  It's

21  a glimpse into who he is.  And we would respectfully

22  request, as this Court fashions a sentence within the

23  Guidelines that is sufficient but not greater than necessary

24  to comport with the 3553(a) factors and that would be in

25  that 120-to-150 range, your Honor, we ask for the low end of

1    that, given the particular circumstances, particularly with

2    what he has done since his arrest to clean himself up and be

3    a better guy.

4        Your Honor, we thank you for this at this time.

5        THE COURT:  Thank you, Mr. Pelagalli.

6        Mr. Wagner, anything you wish to say?

7        THE DEFENDANT:  Yeah.

8        I mean, of course, I just -- I want to just tell

9    Cory's mom I'm sorry.  I mean I never would have -- I never

10   would have let this happen.  I would -- I really wouldn't

11   have.  He was my friend and I'm sorry.  I mean if it was

12   something I could do, I would.

13       I just hope you know that I would never have done this

14   on purpose and I never would have -- I would trade -- I

15   would have trade places.  I wouldn't have -- anybody knows

16   me know I wouldn't have -- I mean I would never hurt

17   anybody.

18       So with that, I'm sorry.  I apologize, and I apologize

19   to my mom, the law enforcement, my aunt over here, my

20   daughters.  And I'm just -- I mean I'm just disappointed in

21   -- I forgot my paper here.

22       So you know, I'm not much of a speech writer or

23   speaker.  But, you know, 30 something years later, I'm not

24   in the same position as I was.  The first memory I have of

25   living, you know, somebody overdosing and me.  And I just

1    hope this can end now and I can get on with this.

2         And this got me -- the officer over here made a --

3    he -- he said that he thought I would be good to help other

4    people, children maybe or something to stay off of drugs and

10:22:55  5    inform.  And stuff, kind of a light bulb went off in my head

6    and kind of change that he would be the one that maybe made

7    me find something that might be what I'm good at doing.  And

8    hopefully I get the chance to do.

9         And I'm asking you to, you know, be as fair as you can

10:23:24 10   with me.  And once again, I'm sorry to Mrs. Cook, his

11   family, my family.

12                THE COURT:  Okay, Mr. Wagner.  Thank you.

13                THE DEFENDANT:  Yeah.  Sorry to the Court for

14   wasting your time.

10:23:36 15                THE COURT:  It's not a waste.

16        On behalf of the Government.

17                MS. DARDEN:  Judge, thank you.

18        I believe Ms. Cook's mother -- Mr. Cook's mother is

19   here and wanted to address the Court, and I will let, I

10:23:54 20   think, her words speak for Corey and what his family has

21   been through and countless other families in this area have

22   dealt with.

23        I take Mr. Wagner's comments at face value.  I believe

24   him when he says he's ready to finally make changes in his

10:24:15 25   life.  It's unfortunate that it had to come at the expense

1    of coming before your Honor in order to really drive home

2    that point of needed change in his life and this is someone

3    who has been arrested, approximately 19 convictions, not

4    even arrests but convictions over the last 24 years.

10:24:37  5        I'll note for the Court that I saw at least five

6    capiases or warrants within his criminal history in the

7    presentence report.  He admittedly has been a drug addict

8    and a drug dealer involved in this community in this life

9    for a very, very long time.  He's paid the physical prices

10:24:56 10   of it by having some medical issues.  He's paid the

11   emotional price of it by losing those around him that he

12   loved and that he cared for.  And now, it seems appropriate

13   and fitting that he pay the price in a criminal way for

14   selling drugs and particularly selling this fatal dose to

10:25:18 15   Mr. Cook.

16        Thinking about the 3553(a) factors, Judge, it seems

17   like the nature and circumstances of the offense here are

18   very clean, very clear.  It's a straight-forward indictment.

19   I do want to just point out, though, that I think by

10:25:36 20   Mr. Wagner's own account, if you were to ask him, it's not

21   just this one isolated incident where he sold to Mr. Cook.

22   I think Mr. Wagner fashioned himself the middle guy, the

23   middling agent for drugs.

24        It was interesting he or his lawyer used the term

10:25:51 25   "helped other people" or other drug dealers, and I think in

1     some way, he thought as himself as helping them score drugs.

2     He would go into neighborhoods or purchase drugs in somewhat

3     unsavory conditions for individuals who were not comfortable

4     doing that on their own behalf, and for remuneration or

10:26:13  5     payment, he took either a portion of the drugs or some money

6     or ride or some other favor in order to keep this cycle

7     going.

8          He had a lot of customers on the west side who were

9     either unwilling or unable to purchase drugs on the east

10:26:26 10     side or other connections that Mr. Wagner had.

11          And so there were many people like Mr. Cook who relied

12     on Mr. Wagner to provide their source of supply.  Again, I

13     take at face value everything Mr. Wagner says about himself

14     and his life.

10:26:43 15          I did want to point out for the Court, as reflected in

16     the PSR, that it took a while for Mr. Wagner to get here

17     because when he was first initially confronted by Detective

18     Emilio Lance of the Lakewood Police Department, who's here,

19     about these allegations and about this overdose, he denied

10:26:59 20     selling to Mr. Cook and denied it again after he was

21     confronted, after he was arrested.  So it was only after, I

22     think, he had some time to really think about it that he

23     admitted his conduct.

24          Perhaps the most important factors here, Judge, I

10:27:15 25     think is the need to consider the deterrent aspect of what's

been going on here.  As I said, I don't mean to overstate
what I believe really is a crisis, an epidemic of heroin and
fentanyl-related deaths in this district and in this state.
We have one of the highest, if not the highest, population
of deaths of men exactly like Corey.  The average person who
dies of a heroin or fentanyl overdose in the State of Ohio
last year was a white male between the ages of 30 and 60,
people who had otherwise led pretty normal lives until this
point.

     And we're facing a real problem in how to encourage
people to stop selling drugs and to stop injecting this
poison in our community.  And one of the tools that our
office and the United States Government has decided is at
its exposure or at its use is the statute and this death
specification that we placed in this indictment to really
hit home, both for the individuals involved and others who
would consider this type of behavior, that when you sell
drugs in our community and someone dies as a result of that,
you have to pay the ultimate penalty.

     And that's what the enhancement was used for, that's
what Congress intended, and that's how it's used here.
Deterrence, I believe, really is the Number 1 factor in
cases like these to help other criminals understand that
when you do this, there are severe consequences and there
are lasting consequences for their behavior.

1          So, Judge, I believe we will approach at some point to

2     discuss some others matters, but I do think the Guideline

3     range sentence of 121 to 151 months is the appropriate

4     sentence here.  And I defer to the Court to otherwise

5     determine that.

6                    THE COURT:  Let's hear from Ms. Cook if

7     she's -- she wants to speak.

8                    MR. PELAGALLI:  Would you like us to go to --

9     all right.  Go on.

10                    THE COURT:  Good morning, ma'am.

11                    MS. COOK:  Hello.

12                    THE COURT:  Hello.  Pull the microphone

13     towards you.

14          Please state your name.

15                    MS. COOK:  Marcia Cook.  I'm Corey Cook's mom.

16                    THE COURT:  Go ahead, ma'am.

17                    MS. COOK:  What he said was all well and good.

18     He wouldn't be saying that if he wasn't caught.  That's my

19     feeling on it.  But Corey was my only son.  And I feel

20     privileged to have been his mom for the short 23 years he

21     was here.

22          Corey and I were very close.  A day didn't pass that

23     we didn't talk, text, or see each other in person.  And I

24     always -- the last three words after every contact was I

25     love you.

1        I lost my heart and soul March 17th, 2016.  The only

2   way I can describe life without my son is that I'm missing a

3   limb, a part of me that I will never get back.  I feel now

4   that I'm just wandering lost in this life.

5        My son, Corey, was an amazing young man with so much

6   to look forward to.  Corey got lost for a moment in time

7   navigating through life's up's and downs.  He recognized

8   very quickly he did not want to continue life down the wrong

9   path.  He came to me for help, and I stood by him proud and

10  confident.

11       Corey motivated himself through a 30-day in-house

12  rehabilitation program and out-patient group that proceeded

13  and also attended the 12-step program religiously every

14  morning at 6:30 A.M.

15       He also persevered with one or more counseling with an

16  amazing therapist.  He worked hard and smart.  He deserved

17  so much credit for his strength and courage.  I supported

18  Corey in everything he did in life, including the difficult

19  times in life.  My son is my heart.  I can't tell you enough

20  about my son, Corey.

21       It was just the two of us for so long, being a single

22  mother.  Corey had to grow up quicker than most.  Corey was

23  a hard working, talented young man.  He started working with

24  the Union at 18 years of age as a millwright apprentice.  He

25  worked hard and made more money at 18 than anyone right out

1    of college.  He was dedicated and respected by his superiors

2    and peers.

3        Corey was also a talented musician, starting guitar at

4    age 7.  Music was life's oxygen for Corey.  I am thankful to

5    have shared in that part of Corey's life, seeing and hearing

6    him create beautiful music.

7        Corey worked hard at his sobriety and was 14 months

8    clean when this Defendant made contact.  Brandon Wagner is a

9    predator to our youth, a distributor of death, with no

10    conscience, no remorse, and no business being a part of this

11    society.

12        He has nothing to contribute.  He is 44 years old and

13    his resumé is full of criminal behavior and his disregard

14    for life and our laws speaks for itself.

15        It sickens me that Brandon's face was the last face

16    Corey saw before he drifted off to sleep from the drug he

17    received from Brandon Wagner.

18        It is now me that has no remorse for you and the

19    sentence that will be imposed upon you.  You have been

20    mocking the law and human life for over two decades.  Your

21    life as a dealer is almost like a middle finger to our law

22    enforcement.

23        I wholeheartedly ask this Court to please sentence

24    Brandon Wagner to the maximum allowed.  This epidemic has

25    employed bottom feeders for far too long.  Putting these

1    criminals away gives youth a chance to survive in this life

2    without this kind of enticement.

3        I think we as a community are finally starting to take

4    this epidemic seriously by removing these individuals from

10:34:21  5    our streets.

6        I wanted to mention Detective Emilio Lance for his

7    compassion and quick action to apprehend Brandon Wagner from

8    our streets.

9        Detective Lance and his team worked hard right out of

10:34:36 10    the gate and had Brandon Wagner in custody in less than two

11    months.

12        The Detective responded to all of my calls and texts

13    and kept me apprised of action being taken.  His care and

14    concern for our community does not go unnoticed.  Thank you

10:34:54 15    Detective Lance.

16        I pray the Court follows Detective Lance's aggressive

17    action against this horrendous drug and the Court passes

18    down the maximum sentence to Brandon Wagner, a sentence that

19    is long overdue for this criminal.

10:35:12 20        I have no idea what life has left to offer me, but I

21    will continue to be involved in removing this trash from our

22    streets and helping those individuals affected by this

23    horrific drug.

24        Thank you, Honorable Judge Boyko.

10:35:28 25            THE COURT:  Thank you, Mrs. Cook.

1          Let's take a look at the report.  Count 1,

2     distribution of heroin, enhancement for death, Class A

3     felony.

4          Count 2, use of a communication facility to facilitate

5     drug trafficking, a Class E felony.

6          On June 14, 2016, the Government filed a two-count

7     indictment in this court.  There is a Rule 11 plea

8     agreement, and we'll get to that later.  As far as the

9     offense conduct, everyone basically knows what happened

10    here.  Briefly summarize, and this will be the nature and

11    circumstances of the offense, as well as the 3553(a) factor

12    and offense conduct.

13         The Defendant is before this Court for sentencing

14    after he pled guilty to the distribution of heroin,

15    enhancement for death, and use of a communication facility

16    to facilitate drug trafficking, distributed heroin to Corey

17    Cook.  Mr. Cook overdosed and died.  He was arrested after

18    investigators arranged a sale of heroin between him and a

19    confidential source.  We have a great deal of information,

20    the report itself, but that's the bottom line.

21         And we do know that he initially denied involvement,

22    but eventually saw the light and admitted his involvement

23    and responsibility.

24         Victim impact.  Provisions of the mandatory Victim

25    Restitution Act of 1996 apply.  Victims in this case, of

course, are deceased and his mother.  We've heard from Mrs.
Cook.  We have many letters regarding the impact to the Cook
family and that side.  Of course, we have the Sentencing
Memorandum provided by Mr. Pelagalli and the letters in
support of Mr. Wagner.  Will discuss more of those at length
later on.

It's no information indicating Defendant either
impeded or obstructed justice.  Just the opposite.  He did
self-surrender.  And again, we will speak to that later on.

As far as acceptance of responsibility, we heard that
in open court from Mr. Wagner.  He did give us a previous
statement which is consistent with what we've heard.

Mr. Pelagalli, would you please go back to the podium
with Mr. Wagner.

MR. PELAGALLI:  Yes, your Honor.

THE COURT:  All right.

We have two separate calculations in this case.  We
have the Guidelines calculation done by Probation and then
we have the plea agreement between the Government and the
Defense, which are very much different.  We'll start with
the offense level computation on the Guideline by Probation.
The 2016 edition of the Guidelines Manual was used.

Counts 1 and 2 are grouped for calculation purposes.
We start off with a Base Offense Level 43.  We have death
resulting from the use of a substance and Defendant

1    committed the offense after one or more prior convictions of

2    a similar offense.  Those will be in his criminal history.

3         No specific offense characteristics.  No

4    victim-related adjustments.  No adjustment for role.  No

10:46:37  5    adjustment for obstruction.  Subtotal is 43.  No Chapter 4

6    enhancements.  Three-level reduction for acceptance of

7    responsibility.  Total offense level is 40.

8         Defendant's criminal history.  No juvenile

9    adjudications.

10:46:52  10         Adult criminal convictions:  5-28-93, valid driver's

11    license, no points; 1-6-97, attempted possession of heroin,

12    no points; 8-15-2000, attempted possession of heroin, with

13    three probation violations, no points.

14         Okay.  1-18-02, shop lifting, no points; 2-12-02,

10:47:17  15    possession of drug abuse instrument, no points, with a

16    probation violation; 2-25-03, possession of drug abuse

17    instrument paraphernalia, driving under an FRA suspension,

18    no points.

19         12-12-03, drug trafficking, two counts and failure to

10:47:34  20    comply with an order of a police officer, no points; 12-12

21    -03, receiving stolen property, no points; 12-12-03,

22    trafficking, crack cocaine within a thousand feet of a

23    school yard, no points.

24         6-12-02, possession of crack cocaine, two points;

10:47:55  25    6-12-02, receiving stolen property, two points; 1-248-08,

1       disorderly conduct intox, no points; 8-7-08, possession of

2       cocaine and possession of heroin, two points.

3           11-16-09, operating a motor vehicle under the

4       influence with a violation, one point; 3-5-2010, disorderly

10:48:17 5   conduct intox, no points; 6-2-10, disorderly conduct intox,

6       no points; 11-23-10, license required to operate, no points;

7       12-28-15, trafficking, two counts, with the community

8       control violation pending, one point.  12-28-15,

9       trafficking, two counts, one point, with a community control

10:48:46 10  violation pending.

11          Criminal history computation, subtotal is 9, come into

12      the present offense while under a sentence for two case

13      numbers back in Common Pleas, two points are added.  Score

14      is 11, Category 5.

10:49:08 15      Starting with Mr. Pelagalli, we agree that because of

16      the mandatory minimum, prior to agreement between the

17      Defense and the Government, you would be in a 6.  That's

18      what it will be.

19          No other criminal conduct, no pending charges.  We

10:49:25 20  have some other arrests consistent with what we've seen.

21      Traffic.

22          Offender characteristics.  Mr. Wagner was born 1973.

23      Father's deceased, mother resides in Berea.  She was a

24      school bus driver and auxiliary police officer.  Currently

10:49:46 25  retired.  No other children.  Mother is supportive.

1       He was raised in Cleveland, moved to Berea at the age

2  of three or four.  Found his father next to a toilet dead

3  from a heroin overdose.  Never received counseling for it.

4  Aside from that, he considered his childhood fun.  He

5  reported no mental health issues or abuse by any family

6  members.

7       He does have one child, 14, doesn't have much

8  information about her.  I believe she may be in prison.

9  That is the birth mother.

10            MR. PELAGALLI:  No, your Honor.

11            THE COURT:  No?

12            MR. PELAGALLI:  No, no.  Fourteen, she has

13  some medical needs, your Honor.

14            THE COURT:  No.  The birth mother.

15            MR. PELAGALLI:  I'm sorry.  She's not in jail

16  either, your Honor.  She's here today.

17            THE COURT:  Okay.  That's what I have in the

18  report.  Apparently suffers from substance abuse issues.

19       His mother, that is Defendant's mother, adopted his

20  daughter.  Reports good relationship with his daughter,

21  currently in school, has some medical issues.

22       In 2009, Defendant was involved with his neighborhood

23  providing skate boards and lessons to kids.  Heard about

24  that.

25       Before his arrest, living in Berea with his mother and

1    daughter.  Prior to that, residing in another home owned by

2    his mother; otherwise, living in friends' homes.

3         From '99 to 2000, living on the street.  Most

4    successful period of probation occurred when he was not

10:51:24  5    using drugs, obviously.  He does believe drug rehabilitation

6    would assist him in future success.

7         Mother confirmed the information that we have.  Said

8    his father's death was devastating.  She states he's a good,

9    kind person doing well for a period of time.  Began seeing a

10:51:43 10    pill mill doctor.

11         Physical condition.  Scarring on his face, right arm

12    from drug use.  Left leg recently had tissue removed,

13    infected, drug use.  Had it all over.  I can see that.  And

14    other medical issues because of drug and alcohol.

10:52:19 15         Mental/emotional health.  Experienced mental health

16    issues when he was young; racing thoughts, severe panic,

17    attempted to overdose, believes he has prior diagnosis of

18    depression, bi-polar anxiety disorder, personality disorder,

19    antisocial personality disorder.

10:52:44 20         Began receiving Social Security benefits for mental

21    health in 2008.  Currently prescribed medications for his

22    mental health.  Does want to participate in mental health

23    counseling.

24         Substance abuse.  Well, there's a long history here.

10:53:01 25    Age of 16 or 17, began drinking, hospitalized with

1    pancreatitis and he had been drinking a fifth of alcohol

2    daily for several years.

3        Age of 14, began smoking dope, tried handful of times,

4    not used it in the last five years.  At 18, began using

10:53:20  5    cocaine, overdosed in '99.  Early 2000, he used daily.  At

6    the time of his arrest, he was using it every couple of

7    weeks.

8        Age of 21, began using heroin, drug of choice, was

9    using it twice a week because he was in a methadone program.

10:53:36 10    When he was not on methadone, he used it daily.

11        In '06, used oxycotin.  Tried Xanax a few times,

12    knowing it was a substance abuse.

13        Three and a half years, he was on methadone program,

14    remained sober, relapsed after he stopped the program and

10:53:54 15    entered Cleveland Clinic for detox.  He was unable to

16    tolerate the detox because of the withdrawals, and he left.

17        Had a period of sobriety after pancreatitis.  He did

18    well until 2014 when he relapsed because of personal issues.

19        Anxiety and depression, according to him, got the best

10:54:15 20    of him.  He did not participate in much treatment.  In '07,

21    he completed a week-long program in custody of the State.

22    Said the program was not good.  Acknowledged that his

23    substance abuse has ruined his relationships because no one

24    wants to be around when him when he, quote, chases drugs all

10:54:33 25    day.

1        Obviously is unable to hold employment.

2    Educational/vocational/special skills.  Reported graduating

3    from Berea high in 1991.  Trained in offset printing,

4    Polaris.

10:54:48   5        Employment.  Again, Social Security disability for his

6    mental health since 2007.  Prior to that, he worked on the

7    motorcycles, sporadically.

8        Financial condition.  Not good.  Based upon what I see

9    in the report here, it appears he does not have the ability

10:55:07  10   to pay a fine.

11        Sentencing options under the statute.  Count 1,

12   minimum is 20 years.  Maximum is life.  Count 2, maximum

13   term is four years.  Starting out with the Guidelines, the

14   range, 360 to life as calculated.

10:55:28  15        Impact of plea agreement.  Based on everything I heard

16   from counsel, the Government started out with offense level

17   of 32.  Six levels were deducted.  Ended up with an offense

18   level of 26; six is his category, range 120 to 150.

19        Supervised release under the statute, at least three

10:56:14  20   years, Count 1; Count 2, not more than one year.  They run

21   concurrently.  Same thing under the Guidelines.

22        Probation under the statute and Guidelines is

23   forbidden by law.

24        Mandatory drug testing will apply unless the Court

10:56:32  25   finds based upon reliable sentencing information that

1   Mr. Wagner would indicate a low risk of substance abuse.

2      Fines under the statute.  The maximum fine is $1

3   million for Count 1; Count 2, the maximum is $250,000.

4   Special assessment of $100 per count is mandatory.

10:56:51  5      Under the Guidelines, the range is $50,000 to $1

6   million.

7      Ms. Morgan, I'm not sure what the range would be under

8   the plea agreement, but it won't matter anyway because he

9   has no ability to pay.

10:57:04 10      Paragraph 99 gives us the factors the Court must

11   consider in determining the amount of any fine or costs to

12   impose.  Again, I'll find those to be irrelevant, based upon

13   inability to pay.  No restitution is due here, either under

14   the statute or the Guidelines.  No requests have been made.

10:57:26 15  Federal benefits may be denied under both the statute and

16   Guidelines for drug-related offenses.

17      Turning to factors that may warrant a departure.  Ms.

18   Morgan has stated an upward departure may be warranted

19   because of his criminal history underrepresenting the

10:57:52 20  seriousness of history and likelihood of committing

21   additional crimes.

22      Turning to factors that may warrant a sentence outside

23   the system.  Start with the Court's job to impose a sentence

24   sufficient but not greater than necessary to comply with the

10:58:05 25  3553(a) factors.  In making this determination, we look at

1    the nature and circumstances of the offense, history and

2    characteristics of the Defendant, the need for the sentence

3    imposed, and kinds of sentences available.

4         Ms. Morgan has not identified any reasons for

10:58:22  5    variance.  There appears to be no unresolved objections by

6    either the Government or the Defense.  So we move on to the

7    3553(a) factors.

8         The Court has briefly stated the nature and

9    circumstances of the offense.  Again, all of us know what

10:58:36 10   happened here.  He distributed the drugs and a young man

11   died.

12        History and characteristics of the Defendant.  We've

13   covered much if not all of this.  We take a look at any

14   prior record, violence, physical abuse, diminished capacity,

10:58:50 15   employment, age, substance abuse, and family ties.

16        Appears to be 43 years old, unmarried, father of one.

17   Raised by his mother after finding his father dead from a

18   heroin overdose, graduated from high school.  Not much

19   employment history; for about ten years on disability for

10:59:09 20   mental health.  Began experiencing issues as a child, did

21   seek counseling, treatment sporadically throughout his life.

22   Has a severe substance abuse issue that began as a teenager.

23   Did have some successful periods of sobriety while on

24   methadone but obviously a serious addiction to heroin and

10:59:27 25   cocaine, alcohol; heroin being the choice.

1          Drug use resulted in medical issues, overuse of

2     alcohol as a result of medical issues.

3          Criminal record began in his early 20's, including

4     five convictions for drug possession, several for drug

10:59:49 5     trafficking, a couple convictions for receiving stolen

6     property, at the time of the present offense, he was also

7     under supervision for two separate drug trafficking cases

8     that occurred in 2015.

9          Does not appear to have any record of violence or

11:00:02 10     suffer from any diminished capacity.  Mother is the main

11     support system.  And his daughter is a teenager.  Otherwise,

12     a few stable connections in the community.

13          Need for sentence imposed.  I'll come back to that

14     when I actually sentence Mr. Wagner.

11:00:20 15          Sentencing disparities.  We look at defendants with

16     similar records and conduct.  Looks like the options that

17     Mr. Wagner faces would be the same for those under similar

18     circumstances, background, criminal history, personal

19     characteristics.

11:00:37 20          No co-defendants in this case.  No restitution is due

21     here.

22          We come back to the final category, need for sentence

23     imposed, and we look at just punishment, afford adequate

24     deterrence, protect the public, reflect the seriousness of

11:00:51 25     the offense, and improve offender conduct and condition.

1        Mr. Wagner, I always start with that last one, which

2   is to improve offender conduct and condition.  I say this to

3   every defendant who appears in front of me.

4        I think it's our universal hope that every defendant,

5   including you, improves himself or herself and make yourself

6   a productive member somewhere down the line, no matter how

7   long it takes, because it's a win/win.  Not only does it

8   improve you personally; it keeps you out of the system and

9   protects the public, from this kind of nonsense that we see.

10  It's an important factor, and I always mention it.

11        There are other factors for us to consider.

12  Mr. Pelagalli has done a nice job in the Sentencing

13  Memorandum speaking on your behalf, letters of support, and

14  it's never always all good or always all bad.  There's

15  always a balancing that's going to occur; always in a case.

16  And that's what we as Judges have to do is balance those

17  factors; listen to both sides, read what's been filed,

18  listen, look at the letters of support, and make a call.

19        In your letters of support, people are telling me

20  you're an intelligent, loving, good father, and as

21  Mr. Pelagalli said, aside from your drug addiction.  So that

22  we see Jekyll and Hydes all the time.  There's the Brandon

23  Wagner that people know outside the drug addiction, then

24  there's the drug-addicted Brandon Wagner.  A lot of times,

25  there's that split personality.  And the one that's been

1    dominating so far is the drug-addicted Brandon Wagner.

2         Is there a problem so far, Mr. Wagner?

3              THE DEFENDANT:  No, your Honor.

4              THE COURT:  All right.  It's not unusual.

11:02:49  5    Even if your intentions are good, the drug-addicted part of

6    you takes over and controls you and you become the puppet to

7    the addiction.  And it guides your actions because you have

8    to have that drug, you have to keep going.  It's

9    unfortunate, but here we have a consequence of that

11:03:09 10    addiction.

11         I will give you credit for self surrendering.  A lot

12    of people do not do that under those circumstances when

13    they're released.  I've had cases where they do go and use

14    drugs or just simply flee.  You didn't do that.  I'll give

11:03:26 15    you credit for that.

16         On the other hand, you've got a great deal of criminal

17    conviction.  All -- you know, most of them drug related.

18    There are five probation violations.  You got two community

19    control violations are pending.  Even in prison you had

11:03:42 20    multiple violations, disciplinary actions.

21         Ms. Cook, I know it's very difficult for you to come

22    in here and speak about your son, obviously.  Your letter

23    was very well written.  You spoke very well and expressed

24    your feelings very well.

11:04:06 25         I can't think of anything harder than burying a child.

1    It's unnatural.  We, as parents, are supposed to die before

2    our kids, and when that doesn't happen, it throws everybody

3    out of whack.  Everybody.

4         I thought maybe after 22 years of being on the bench,

11:04:26  5    it would get easier.  It doesn't up here.  It doesn't get

6    any easier, nor should it.  If it gets easy, it's time for

7    me to go home.

8         You know, for being the most powerful nation in the

9    country, we're rotting from the inside out.  It's not going

11:04:47 10    to be because some military force overtakes us.  It's

11    because of this stuff.  It's tearing families apart,

12    neighborhoods, communities, our nation.  And people wonder

13    why the federal sentences are so severe compared to the

14    state.

11:05:06 15         I look at your history, Mr. Wagner.  You've got so

16    many convictions, and the most you've done is one year.  You

17    can do that standing on your head.  Not the case anymore

18    when you come to Federal Court.  Why?  Because Congress

19    hears the horror stories about all these national problems.

11:05:25 20    It's a nationwide problem; and as Ms. Darden has pointed

21    out, especially so in Ohio and Cuyahoga County.  Burying

22    people every single day here from overdoses.  It's a

23    scourge.  And, unfortunately, we had another young man we

24    had to bury here.

11:05:52 25         You always wonder what could have been, what would

1    have been, what should have been.

2         I read the Victim Impact letters, provided to me by

3    the Government, and it tugs at my heart because of the

4    domino effect this death has had, not just on immediate

5    family but others who have known Corey throughout the years,

6    you know.  And it does take two.  It takes the dealer and it

7    takes the user.  It takes two.  No question.  It's not just

8    one sided either way.  But, when one is willing to deal and

9    the other one is asking, it's the perfect storm for

10   something bad to happen.  And it did.

11        Mr. Wagner, I hope you're a different person now.  I

12   hope you are.  And it's hard to believe you're still alive

13   after all that you've been through.  You don't want to be a

14   walking dead man because when you're in the throws of a

15   heroin addiction, that's what you are; a walking dead man,

16   as are others.

17        We had a case where a woman sold her baby to get drugs

18   back in State Court.  That's how powerful addictions can be.

19   Sold her baby.  So do I understand it?  Oh, yes.  I

20   understand.

21        So let's get back to the balancing.  You'll be

22   punished.  Hopefully it will be deterrence.  We have to

23   reflect the seriousness of the offense, balance that with

24   everything that the Defense has presented as well as the

25   Government.

1          I honor plea agreements in general because they've

2     been the result of negotiations between the Government and

3     the Defense.

4          And the range would be 120 to 150 months.  Let's go

5     ahead and sentence you.

6          All right, Mr. Wagner.  It's the judgment of this

7     Court that you are committed to the custody of the Bureau of

8     Prisons for a term of 150 months, that is the high end of

9     the range, Count 1, 48 months, Count 2, to be served

10     concurrently.  Supervised release three years.  Three years

11     on Count 1, one year on Count 2, to run concurrently.

12          Within 72 hours of release from the custody of the

13     Bureau, you'll report in person to the U.S. Probation Office

14     in the sentencing district or in the district to which you

15     are released.

16          I'll waive the fine based upon the inability to pay.

17     Special assessment of $200 to the United States, due

18     immediately.

19          Upon supervision, you'll not commit another federal,

20     state, or local crime.  You'll not illegally possess a

21     controlled substance.  You'll comply with the standard

22     conditions that have been adopted by this Court and with the

23     following additional conditions.

24          You'll refrain from any unlawful use of a controlled

25     substance, submit to one drug test within 15 days of the

1    commencement of supervision, to at least two periodic drug

2    tests thereafter as determined by Probation.  You will not

3    possess a firearm, destructive device, or any dangerous

4    weapon.  And you'll participate in an approved program of

5    substance abuse testing and our out-patient or in-patient

6    substance abuse treatment as directed by Probation and abide

7    by the rules of the program.

8         You'll not obstruct or attempt to obstruct in any

9    fashion with the efficiency, accuracy of any prohibited

10   substance abuse testing.

11        I'll recommend the 500-hour RDAP program.  The finest

12   in the country.  If he doesn't qualify, for whatever reason,

13   the most intensive for which he does.

14        You will undergo mental health evaluation and

15   participate in mental health treatment as directed by

16   Probation.  Also institutional.

17        You'll cooperate in the collection of DNA as directed

18   by Probation and submit your person, residence, place of

19   business, computer or vehicle to a warrantless search,

20   conducted and controlled by the Probation Officer, at a

21   reasonable time and in a reasonable manner, and based upon

22   reasonable suspicion of contraband or evidence of a

23   violation of a condition of release.  Failure to submit to a

24   search may be grounds for revocation, which means you go

25   back to prison.  The Defendant shall inform any other

1    residents that the premises may be subject to a search under

2    this condition.

3         And you'll abstain from the use of alcohol and not be

4    present in any location where alcohol is a primary item for

11:12:44 5    sale.  I believe that's all I have.

6         Mr. Pelagalli, does Mr. Wagner object to the sentence?

7              MR. PELAGALLI:  Your Honor, just the request

8    for recommendation for --

9              THE COURT:  Let's take one thing at a time.

11:12:58 10              MR. PELAGALLI:  Sorry.

11              THE COURT:  Does the Defendant object to the

12    sentence?

13              MR. PELAGALLI:  No, your Honor.

14              THE COURT:  Does he waive the reading of his

11:13:05 15    appellate rights?

16              MR. PELAGALLI:  Yes, your Honor.

17              THE COURT:  Okay.

18         Any additions, comments, or objections that we haven't

19    covered?  And I'll deal with the recommendation,

11:13:13 20    Mr. Pelagalli.  Anything else besides that?

21              MR. PELAGALLI:  Nothing else.

22              THE COURT:  Okay.

23         Ms. Darden, on behalf of the Government?

24              MS. DARDEN:  No, Judge.  Thank you.

11:13:20 25              THE COURT:  Mr. Pelagalli, please go ahead,

1    other than your recommendation.

2            MR. PELAGALLI:  Yes, your Honor.

3        Obviously, we would request, pursuant to the

4    Sentencing Memorandum, that any time he spent be given

5    credit, full credit for that time, as well as recommendation

6    from the Court for both mental health and drug treatment

7    while incarcerated.  And I believe we request Elkton

8    facility.

9            THE COURT:  All right.

10       I have already ordered the mental health treatment, as

11   well as the drug abuse treatment.  I will recommend Elkton.

12       Mr. Wagner, the Bureau of Prisons will profile you and

13   determine whether your profile fits Elkton.  If it does,

14   they can send you there.  If not, anywhere in the country.

15   It's their call.

16       BOP to determine the credit.  I'll recommend the

17   credit for the time you spent in federal custody.

18       Mr. Pelagalli, anything else before we adjourn?

19           MR. PELAGALLI:  Nothing, your Honor.  Thank

20   you.

21           THE COURT:  Ms. Darden?

22           MS. DARDEN:  No, Judge.  Thank you.

23           THE COURT:  Ms. Cook, I hope you can heal and

24   move on from this point forward, ma'am.

25       Just get some closure.  There's a ways to go.  But,

1    with the help of family and friends, I think you'll be okay.

2    All right.

3            We're adjourned, everyone.

4            (Proceedings adjourned at 11:14 a.m.)

5

6                    C E R T I F I C A T E

7            I certify that the foregoing is a correct

8    transcript from the record of proceedings in the

9    above-entitled matter.

10

11

12

13   s/Shirle Perkins_____
     Shirle M. Perkins, RDR, CRR
14   U.S. District Court - Room 7-189
     801 West Superior Avenue
15   Cleveland, Ohio 44113
     (216) 357-7106
16

17

18

19

20

21

22

23

24

25